THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto (Cal. Bar No. 230530)
4475 Mission Boulevard, Suite 238
San Diego, CA  92109
Telephone: (602) 456-1901
Facsimile: (602) 801-2834
benedetto@the-plf.com

*Firm email for docketing purposes:*
admin@the-plf.com

*Attorneys for Plaintiff Joseph James Pitrioliere*

UNITED STATES DISTRICT COURT

CENTARL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Joseph James Pitrioliere, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| County of Riverside; Deputy John Doe 1; Dr. John Doe 2; John Does 3-20; | |
| Defendants. | (JURY TRIAL DEMANDED) |

For his Complaint against Defendants County of Riverside, Deputy John Doe 1, Dr. John Doe 2, and John Does 3-20, Plaintiff Joseph James Pitrioliere, through undersigned counsel, hereby alleges as follows:

**INTRODUCTION**

1.     This is a civil rights and negligence action arising from a January 14, 2025 transport crash and subsequent denial of medical care suffered by Plaintiff Joseph James Pitrioliere, a pretrial detainee in the custody of the Riverside County Sheriff's Department ("RCSD").

2. Plaintiff was shackled, unbuckled, and transported in an RCSD vehicle driven by a deputy who failed to secure him. During transport, the deputy drove in a reckless and unsafe manner, causing Plaintiff to be violently thrown forward into a metal grate, sustaining serious injuries to his head, neck, spine, and extremities.

3. Following the crash, RCSD medical personnel and/or policymakers deliberately interfered with and denied Plaintiff necessary follow-up neurological care, despite objective evidence of cervical spine injury and referral orders.

4. Defendants' conduct violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution, actionable under 42 U.S.C. § 1983, and also constitutes negligence and related torts under California law.

**PARTIES, JURISDICITON, AND VENUE**

5. Plaintiff Joseph James Pitroliere ("Plaintiff") is, and at all relevant times was, a pretrial detainee housed at Robert Presley Detention Center in Riverside County, California.

6. Defendant County of Riverside is a public entity organized under the laws of the State of California and is responsible for the policies, practices, training, supervision, and customs of the Riverside County Sheriff's Department ("RCSD") and its medical services for detainees.

7. Defendant Deputy John Doe 1 ("Deputy Doe 1") was at all relevant times a sworn RCSD deputy assigned to inmate transportation and was acting under color of state law.

8. Upon information and belief, Defendant Dr. John Doe 2 ("Dr. Doe 2") was at all relevant times a medical professional duly employed or contracted by RCSD to provide and/or oversee medical care to RCSD detainees.

9. Plaintiff is presently unaware of the true names and capacities of John Does 3–20, inclusive, who, upon information and belief, are RCSD employees and staff (including without limitation deputies, officers, doctors, nurses, and other medical professionals) who participated in or ratified the acts alleged herein. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

10.    This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff asserts claims arising under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

11.    This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367, as those claims arise out of the same nucleus of operative facts.

12.    Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred within Riverside County, California, which lies within the Central District of California.

## GENERAL ALLEGATIONS

### Plaintiff's Status and Medical Transport

13.    At all times relevant to this Complaint, Plaintiff was a pretrial detainee, entitled to constitutional protections under the Fourteenth Amendment, including the right to reasonable safety and adequate medical care.

14.    Prior to January 14, 2025, Plaintiff had been awaiting a dermatological appointment for approximately three months to address a serious skin condition.

15.    On January 14, 2025, at approximately 6:00 a.m., RCSD employees (including Defendants John Does 3-20) shackled Plaintiff and placed him in a transport vehicle bound for Riverside University Medical Center.

16.    Despite Plaintiff being restrained in shackles and unable to protect himself, Deputy John Doe 1 ("Deputy Doe 1") failed to secure Plaintiff with a seatbelt or other safety restraint.

### The Transport Crash and Injury

17.    During transport, while driving on a public highway, Deputy Doe 1 drove the vehicle in a sudden, jerking, swerving, and braking manner causing Plaintiff to be violently thrown forward from his seat.

18.    Plaintiff smashed his head and neck into a metal grate separating the passenger compartment from the cab before collapsing onto the floor of the vehicle while shackled.

19.    Plaintiff immediately experienced severe pain in his head, neck, back, wrists, and knee.

20.    Plaintiff yelled out for assistance while lying tangled on the floor, but the deputy failed to stop the vehicle or render aid.

21.    Upon arrival at the hospital, the deputy acknowledged witnessing Plaintiff "take a tumble" and apologized.

### Delayed and Denied Medical Care

22.    Plaintiff complained immediately of head and neck pain.

23.    Plaintiff was forced to choose between cancelling his long-awaited dermatology appointment to go to the emergency department, or returning to the jail and seeking treatment there.

24.    After returning to the jail, Plaintiff's injuries were deemed serious enough that he was transported back to the hospital.

25.    Diagnostic imaging, including a CT scan, revealed injury to Plaintiff's cervical spine at C5–C6, with suspected nerve involvement.

26.    Plaintiff was discharged with a referral for neurological follow-up care.

27.    Upon information and belief, Defendant Deputy Doe 2 and/or RCSD policymakers overrode, denied, or cancelled the neurological referral, leaving Plaintiff without necessary diagnostic or therapeutic care.

28.    Plaintiff continues to suffer pain, neurological symptoms, and functional impairment as a result.

### FIRST CLAIM FOR RELIEF
**42 U.S.C. § 1983 –Fourteenth Amendment,**
**Objective Unreasonableness / Failure to Protect)**
(Against Deputy John Doe 1, Does 3-20)

29.    Plaintiff incorporates all allegations in the foregoing paragraphs as if they were fully set forth herein.

30.     42 U.S.C section 1983 provides, in relevant part, as follows:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory of the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress...

42 U.S.C. § 1983.

31.     Plaintiff is a citizen of the United States.

32.     Deputy Doe 1 and Does 3-20 are "persons" as that term is defined by 42 U.S.C. § 1983.

33.     Deputy Doe 1 and the Doe RCSD employees were, at all times relevant hereto, acting under the color of law in his capacity as an RCSD deputy; their acts and omissions were conducted within the scope of his official duties or employment.

34.     At the time of the complained-of events, the Fourteenth Amendment to the United States Constitution clearly established Plaintiff's right to be free from objectively unreasonable risks of serious harm.

35.     Upon information and belief, several of the 18 Doe RCSD employees were actually involved in failing to properly secure Plaintiff's seatbelt prior to transport—a failure that was objectively unreasonable and violated Plaintiff's constitutional rights.

36.     The actions of Deputy John Doe 1 in transporting a shackled detainee without a seatbelt and driving in a reckless and unsafe manner was objectively unreasonable and violated Plaintiff's constitutional rights.

37.     The acts and omissions of the Doe RCSD employees and Deputy Doe 1 were moving forces behind Plaintiff's injuries, intentionally depriving him of his constitutional rights and causing him other damages.

38.     The Doe RCSD employees and Deputy Doe 1 are not entitled to qualified immunity for the conduct complained of in this Complaint.

39.     As a proximate result of the unlawful and unconstitutional conduct of the Doe RCSD employees and Deputy Doe, Plaintiff suffered injuries and other damages and losses as described herein entitling Plaintiff to compensatory, economic, consequential and special damages in an amount to be determine at trial.

40.     Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Fourteenth Amendment, Deliberate Indifference to Serious Medical Needs
### (Against Dr. John Doe 2 and DOES 3-20)

41.     Plaintiff incorporates all allegations in the foregoing paragraphs as if they were fully set forth herein.

42.     42 U.S.C section 1983 provides, in relevant part, as follows:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory of the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress...

42 U.S.C. § 1983.

43.     Plaintiff is a citizen of the United States.

44.     Dr. Doe 2 is a "person" as that term is defined by 42 U.S.C. § 1983.

45.     Does 3-20 are "persons" as that term is defined by 42 U.S.C. § 1983.

46.     Upon information and belief, Dr. Doe 2 and Does 3-20 were, at all times relevant hereto, acting under the color of law in their respective capacities as employees or contractors for RCSD, and their acts and omissions were conducted within the scope of their official duties or employment.

47.     At the time of the complained-of events, the Fourteenth Amendment to the United States Constitution clearly established Plaintiff's right to be free from deliberate indifference to his serious medical needs.

48.     As set forth herein, Plaintiff was (and has been) suffering from an objectively serious medical condition involving cervical spine injury and neurological risk.

49.     Upon information and belief, Dr. Doe 2 and several of the 18 Doe RCSD employees knew of and disregarded the substantial risk to Plaintiff's health by denying or overriding specialist care.

50.     Such conduct constitutes unconstitutional deliberate indifference in violation of the Fourteenth Amendment to the United States Constitution.

51.     Dr. Doe 2's and Does 3-20's acts and/or omissions were moving forces behind Plaintiff's injuries, intentionally depriving him of his constitutional rights and causing him other damages.

52.     Dr. Doe 2 and Does 3-20 is not entitled to qualified immunity for the conduct complained of in this Complaint.

53.     As a proximate result of Dr. Doe's and Does 3-20's unlawful and unconstitutional conduct, Plaintiff suffered injuries and other damages and losses as described herein entitling Plaintiff to compensatory, economic, consequential and special damages in an amount to be determine at trial.

54.     Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

### THIRD CLAIM FOR RELIEF
**42 U.S.C. § 1983 – Municipal Liability under *Monell***
**(Against Defendant County of Riverside)**

55.     Plaintiff incorporates all allegations in the foregoing paragraphs as if they were fully set forth herein.

56.    Defendant County of Riverside (the "County") is subject to the provisions of 42 U.S.C. § 1983 through the holding of the United States Supreme Court in *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978).

57.    At all relevant times, the County, through its Sheriff's Department and its contracted and/or employed medical providers, exercised final authority over detainee medical care, including specialist referrals and follow-up treatment.

58.    Plaintiff has suffered injuries that were caused by the County's unconstitutional policies, practices, customs, and/or failures to train/supervise/discipline, and by the County's deliberate indifference to the known or obvious consequences of those municipal decisions.

### Failure to Secure Detainees for Transport

59.    Upon information and belief, the County maintained, permitted, tolerated, and/or failed to correct a widespread custom and practice of transporting restrained detainees without seatbelts or other adequate safety restraints, despite the obvious and foreseeable risk of serious injury during normal driving maneuvers.

60.    The risk of harm from transporting a shackled person without a seatbelt is obvious: shackles materially impair balance, bracing, and self-protection, making foreseeable vehicle movements—braking, turning, acceleration—unreasonably dangerous without proper restraint.

61.    The County's transport custom described above was a moving force behind Plaintiff's injuries because it placed him in a known danger zone: restrained, unbuckled, and dependent on deputies for basic safety.

### Failure to Train, Supervise, and Discipline

62.    Even if RCSD did not have an express written "no seatbelt" rule, the County is liable because, upon information and belief, it failed to train and supervise deputies in a manner reasonably necessary to prevent unconstitutional harm during detainee transport.

63. The need for adequate training on restrained-detainee transport safety is obvious: deputies control whether a restrained detainee is seatbelted, deputies control vehicle operation, and detainees cannot protect themselves.

64. The County is responsible for training and supervising jail medical decisionmakers and gatekeepers who approve, deny, or override outside referrals.

65. After the transport injury, Plaintiff underwent diagnostic evaluation, including CT imaging, and was diagnosed (at minimum) with suspected injury at C5-C6 and possible nerve involvement, with a neurology referral for follow-up.

66. Despite that referral, Plaintiff's neurological follow-up was, upon information and belief overridden by an RCSD medical staff-person—upon information and belief, either the RCSD Medical Director himself or an RCSD employee acting under his supervision.

67. Upon information and belief, the County maintains a policy/custom/practice allowing a jail medical director or other County medical gatekeeper to cancel, deny, or indefinitely delay outside specialist referrals, even when those referrals are medically indicated following hospital evaluation and discharge instructions.

68. Upon information and belief, this referral-override practice is implemented without adequate clinical safeguards, without timely alternative evaluation, and without an individualized, medically appropriate justification documented and communicated to the detainee—resulting in predictable delays and denials of necessary care.

69. The County's policies, customs, and failures described herein were the moving force behind Plaintiff's constitutional injuries, and Plaintiff is entitled to all damages, declaratory relief, and appropriate injunctive relief available under 42 U.S.C. § 1983.

- 9 -

70. The need for adequate policies and training ensuring timely specialty follow-up is obvious in the jail setting because detainees are wholly dependent on the County for access to care and cannot self-refer.

71. Upon information and belief, the County failed to establish and enforce adequate training and protocols to ensure that serious post-injury referrals—such as neurological follow-up after a cervical spine injury—are not cancelled or overridden without timely, clinically appropriate substitute evaluation and treatment.

72. Upon information and belief, the County failed to ensure meaningful review, auditing, and discipline when referral denials cause prolonged pain, neurological deterioration, and preventable complications.

73. This failure to train/supervise was a moving force behind Plaintiff's continued denial of neurologic care following a documented cervical spine injury and referral.

74. The specific incident involving Plaintiff follows a decade-plus period of time when RCSD has come under severe scrutiny for its treatment of inmates and detainees, including without limitation excessive force, conditions of confinement, and deliberate indifference to detainee medical needs.

Notice, Deliberate Indifference, and Causation
Supported by Riverside County's Documented History

75. The County's deliberate indifference is supported by longstanding, public, and official notice that RCSD jails have been marked by a systemic disregard of detainee safety.

76. The County has been subject to a federal class action concerning constitutionally deficient medical and mental health care in its jails (*Gray v. County of Riverside*, Case No. 5:13-cv-00444, C.D.Cal 2013) culminating in a Consent Decree intended "to ensure the provision of constitutional health care" for people detained in Riverside County jails.

77. The existence of that Consent Decree and ongoing oversight placed the County on direct notice that jail medical systems—triage, referrals, follow-up, and specialist care—require constitutional compliance and cannot be treated as discretionary or optional.

78. Advocates and public entities have continued to raise concerns about Riverside County custody deaths and deficiencies in jail oversight, including references to the *Gray* consent decree and its oversight role.

79. In February 2023, the California Attorney General publicly announced a civil rights investigation into the Riverside County Sheriff's Office to determine whether it engaged in a pattern or practice of unconstitutional conduct, including allegations relating to conditions of confinement in jail facilities, excessive force, and other misconduct.

80. This statewide investigation—announced years after the Gray litigation—provides additional notice that Riverside County jail practices remained the subject of serious constitutional concern at the highest levels of state enforcement authority.

81. Major reporting, including from the New York Times, has documented extensive issues at RCSD jails, including that 2022 was among the worst years for detainee deaths and that institutional problems were implicated.

82. More recent reporting from the New York Times identified ongoing problems with inexperienced staff leading to unremedied inmate safety concerns.

83. In July 2025, the Riverside County Board of Supervises officially explored the possibility of civilian oversight of RCSD due, in part, to the ongoing concerns with the failures of RCSD to address inmate safety concerns—and then failed to implement that initiative.

84. Through late 2025, Riverside County faced pressure from community groups for transparency, accountability, and oversight regarding a series of high-profile inmate safety failures that had catastrophic consequences.

85.     In December 2025, Riverside County faced a federal lawsuit for refusal to disclose public documents relating to in-custody deaths and other inmate safety issues.

86.     The County's longstanding notice—through federal litigation and consent decree oversight, documented custody-condition concerns, and an Attorney General civil rights investigation—made it obvious that constitutional violations would recur absent meaningful changes to training, supervision, discipline, and medical access systems.

87.     Despite this notice, the County maintained customs and practices that predictably cause serious harm and willfully disregard the basic safety of detainees, including detainee transport safety and medical gatekeeping practices that deny or override necessary specialist follow-up.

88.     Plaintiff's injuries are the precisely foreseeable consequences of municipal indifference: a shackled detainee transported without being seatbelted is foreseeably injured during normal driving, and a detainee with a cervical spine injury foreseeably suffers prolonged pain and neurological risk when specialty follow-up is denied or overridden.

## FOURTH CLAIM FOR RELIEF
### Common Law Negligence
### (Against All Defendants)

89.     Plaintiff incorporates all allegations in the foregoing paragraphs as if they were fully set forth herein.

90.     At all times relevant to this complaint, all Doe Defendants were duly employed by the County, and acting in the course and scope of their employment.

91.     Deputy Doe 1 owed Plaintiff the duty to act as a reasonable transport officer under the circumstances, and breached that duty when he failed to properly secure Plaintiff before transport.

92. Dr. Doe 2 owed Plaintiff the duty to act as a reasonable medical provider, and breached that duty when he failed to ensure that Plaintiff receive the recommended appropriate medical treatment for his spinal injury.

93. Does 3-20, each and all of them, owed Plaintiff individual duties to act as reasonable professionals under the circumstances, and breached those duties as set forth herein.

94. As a direct and proximate result of those breaches Plaintiff was injured an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### Negligent Hiring, Training, and Supervision
### (Against the County only)

95. Plaintiff incorporates all allegations in the foregoing paragraphs as if they were fully set forth herein.

96. The County owed Plaintiff, and all other similarly situated individuals, the duty to act with reasonable care in hiring, training, and supervision its detention, transport, and medical employees.

97. Upon information and belief, the County breached that duty to Plaintiff by failing to employ reasonable efforts with respect to its hiring, training, and supervision of Deputy Doe 1, Dr. Doe 2, and Does 3-20.

98. Plaintiff was injured as a direct and proximate result of the County's breaches as set forth herein, and suffered damages in an amount to be proven at trial.

## COMPLIANCE WITH CALIFORNIA TORT CLAIMS ACT

99. Plaintiff timely presented a written claim to the County of Riverside on July 11, 2025, in compliance with Government Code §§ 905, 910, and 945.4.

100. The County failed to pay that Notice of Claim, resulting in rejection of the claim by operation of law.

- 13 -

## DEMAND FOR JURY TRIAL

101.   Plaintiff hereby demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joseph James Pitrioliere respectfully requests that the Court enter judgment against Defendants as follows:

 a.   For damages against defendants in an amount to compensate Plaintiff fully and fairly for the violations of his Constitutional Rights;

 b.   For general, consequential, special, and compensatory damages, including but not limited to his pain and suffering, mental anguish, emotional suffering, and loss of enjoyment of life;

 c.   For nominal damages as provided for by law;

 d.   For punitive damages in an amount sufficient to punish defendants and deter them from similar unconstitutional and unlawful conduct in the future;

 e.   For prejudgment interest on all liquidated sums;

 f.   For attorneys' fees under 42 U.S.C. §§ 1983 and 1988;

 g.   For Plaintiff's costs and other expenses incurred in this action; and

 h.   Such other and further relief as the Court deems just.

DATED this 9th day of January, 2026.

THE PEOPLE'S LAW FIRM
645 North 4th Avenue, Suite A
Phoenix, Arizona  85003


By:_____
  Stephen D. Benedetto

*Attorneys for Plaintiff Joseph James Pitrioliere*